IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANFORD J. ASMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ERIK DYKEMA, an individual,<br>KYLE ZELLER, an individual,<br>CASERAILS, an unincorporated fictitious name used by Erik Dykema and Kyle Zeller, and<br>DOCRAILS, INC., a Delaware corporation,<br><br>Defendants. | Civil Action No.<br>1:15-cv-01866-ELR |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

**COMES NOW,** plaintiff Sanford J. Asman ("Asman"), who responds to the Motion To Dismiss And For Judgment On The Pleadings [17] of defendants Erik Dykema ("Dykema"), Kyle Zeller ("Zeller"), and Docrails, Inc. ("DocRails") (collectively, "Defendants"), as follows:

**Relevant Facts**

In their Motion [17] Dykema and Zeller moved to dismiss the First Amended Complaint [5] pursuant to Fed. R. Civ. P. 12(b)(2) based on their allegation that this

- 1 -

court lacks personal jurisdiction over them, and DocRails moved for judgment on the pleadings based on its assertion of lack of jurisdiction, as set forth in its Answer [12].

As acknowledged by Defendants, Plaintiff's operative pleading is the First Amended Complaint [5] which was brought by Plaintiff to remedy acts of, *inter alia*, federal and common law trademark infringement; false designation of origin and misrepresentation in commerce; false advertising; unfair competition; dilution; and misappropriation, all caused by, *inter alia*, the Defendants' infringement of Plaintiff's federally registered "CaseWebs®", "CaseSpace®", and "CaseWorks Web®" trademarks ("the Asman Marks").

The alleged infringements are being conducted by the operation, on the internet, of the "CaseRails" web-based document preparation service located at http://www.caserails.com ("the CaseRails web site"). Notably, the Defendants' entire business is a web-based business that is accessible to anyone, anywhere (including Georgia) who has internet service. Specifically, the CaseRails web site and application claim to provide a single location where lawyers can create and manage documents. Neither Defendant DocRails, Inc. nor Defendants Dykema or Zeller, ship any products to anyone. Instead, they have set up the CaseRails web site as their exclusive "location" for offering and providing the "CaseRails" services. Lawyers can sign up and use the "CaseRails" services solely on the CaseRails web site, which (along with the application) are accessible worldwide. *See*, Exhibits 1-3.

In order to avoid litigating the matter in Georgia, Defendants held out that the matter should be dismissed based upon lack of personal jurisdiction, and to support that position Defendants submitted declarations by Defendants Dykema and Zeller. In those declarations Dykema affirmed under oath, *inter alia,*

(a) "DocRails does not have any **investors** … in Georgia (Dykema Decl. [17-1] ¶ 8).

**Notwithstanding the foregoing statement, the CaseRails web site specifically identifies at least Alston & Bird, Google, Invesco, Goldman Sachs, BlueCrest, PwC, Morgan Stanley, and King & Spalding as being investors.** *See,* **Exhibit 4.**

(b) "DocRails products and services (including the "CaseRails" service) have not been sold or, except on a limited trial basis, as described below, licensed to any person or company in Georgia." (Dykema Decl. [17-1] ¶ 9).

**"Except on a limited basis" is simply another way of saying that DocRails has been sold and licensed in Georgia, and as admitted by defendant Dykema, he has personally sought to extend such sales by,** *inter alia,* **the Solicitation Email.** *See,* **Solicitation Email [5-5].**

(b) "DocRails products and services (including the 'CaseRails' service) have not been advertised, promoted or marketed in any newspapers or other media outlets in Georgia." (Dykema Decl. [17-1] ¶ 10).

**As will be set out below, the use of "media outlets" is irrelevant to a web-based service such as CaseRails.**

(c) "Neither DocRails nor I have derived any revenue from any business activities of DocRails or other business activities in the State of Georgia." (Dykema Decl. [17-1] ¶ 11).

**As will be set out below, derivation of revenue is not required, as Defendants Dykema and DocRails have sworn that they are using the subject "CaseRails" mark in commerce throughout the country,** *i.e.,* **including Georgia, based on their having filed U.S. trademark application Ser. No. 86619540 in the U.S. Patent and Trademark Office in which they swore that no one else had the right to use the mark in commerce.** *See,* **Exhibit 5.**

(d) "I have sent e-mail messages similar to the May 8 E-mail to numerous other attorneys, whose e-mail addresses have been obtained from publicly-available sources. I do not know the places in which the recipients of such messages are physically located." (Dykema Decl. [17-1] ¶ 16).

**If anything, this statement is clearly *not* a denial by Defendants that they inundated Georgia attorneys with emails similar to those sent to plaintiff.**

(e) "In the past 2 years, approximately 252 trial users of DocRails' CaseRails service have been permitted to log in to [sic] the CaseRails service, which was and is hosted on one or more computer servers in Virginia, and use the service for a limited number of times, without charge, in order to evaluate the service and provide feedback to DocRails' developers regarding the service's technical issues or features." (Dykema Decl. [17-1] ¶ 20); and

**If anything, this statement is clearly *not* a denial by Defendants that as many as *all* of the 252 users were located in Georgia.**

(f) DocRails does not obtain information regarding the location of trial users, and can only make an educated guess regarding a trial user's location based [on] the IP address from which he or she logs into the CaseRails service." (Dykema Decl. [17-1] ¶ 21).

**If anything, this statement is clearly *not* a denial by Defendants that as many as *all* of the trial users were located in Georgia. This is especially problematic in that only defendants are in possession of the IP addresses, which they have not produced to Plaintiff.**

In his Declaration, Defendant Zeller expressly confirmed Dykema's statements as to DocRails. (Zeller Decl. [17-2] ¶ 2)

Further, both Dykema and Zeller stated that there is no legal entity named "CaseRails".

## Legal Argument

Initially, this case is quite similar to *Wish Atlanta, LLC v. Contextlogic, Inc.*, Case No. 4:14-cv-00051 (CDL), M.D. Ga., 214 U.S. Dist. Lexis 143681 in which District Judge Land reviewed a very similar fact pattern in which defendants sought to avoid Georgia jurisdiction and venue in a trademark infringement action based on their use of a web-based business.  In his Order dated October 10, 2014, (Exhibit 6) Judge Land noted, *inter alia*, that in determining whether jurisdiction in Georgia is proper under Georgia's long-arm statute, O.C.G.A. § 9-10-91(1), the phrase "transaction of business" is to be interpreted literally. *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675, 620 S.E.2d 352, 355 (2005).  Further, the Eleventh Circuit defined "transacts any business" as "the doing of some act or consummation of some transaction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010)(quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) ("[U]nless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case." *Id.* at 1263).  Specifically, physical presence in Georgia is unnecessary, but business transaction may be "conducted through … Internet contacts." *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.,* 298 Ga. App. 528, 534, 680 S.E.2d 571, 576 (2009).

The Georgia cases in which websites were used by a defendant seeking to avoid Georgia jurisdiction in which such jurisdiction was denied are those wherein the defendants did not seek to sell any products through their website. *See, Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC,* 819 F. Supp. 2d 1338, 1343-44 (M.D. Ga. 2011). The crucial fact in *Jordan Outdoor Enterprises* is that the defendants did not sell any products to Georgia residents through the internet, and thus the websites failed to generate any business for defendants in Georgia. *Id.* at 1343. By contrast, the entire business of defendants herein is the CaseRails web site, and Defendants have admitted that they specifically targeted Georgia attorneys, including the plaintiff herein, to generate business using the CaseRails web site.

With respect to the issue of whether Defendants' actions have subjected them to personal jurisdiction in Georgia, it is noted that there are two types of personal jurisdiction, *i.e.,* general jurisdiction and specific jurisdiction. While Defendants' actions may not have subjected them to general jurisdiction, Plaintiff maintains that their actions do subject them to specific jurisdiction. In that regard, the leading case in the country, with respect to specific jurisdiction being based upon internet contacts is *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). While the Eleventh Circuit has yet to endorse or reject the *Zippo* test, many other circuits have adopted it. *See, e.g., ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *Mink v. AAAA Dev. LLC*, 190

F.3d 333, 336 (5th Cir. 1999), and, as will be seen below, former District Judge (now sitting on the Eleventh Circuit Court of Appeals) Julie Carnes not only strongly adopted the *Zippo* test, but she pointed out that other District Judges in the Northern District (including Judges Evans and Hunt) did so, as well.

Specifically, the *Zippo* test sets forth a sliding scale for determining whether internet contacts suffice to create jurisdiction. On one end of the scale are "situation where a defendant clearly does business over the Internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. In these cases, personal jurisdiction is proper. *Id.* At the other end of the scale are "situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* These "passive" websites are "not grounds for the exercise of personal jurisdiction." *Id.* In the middle of these two extremes are "interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

The present case involves a business and service that is entirely web-based (*See,* Exhibits 1-4), whereby it is in the first category of cases set out in the *Zippo* test, whereby this Court should hold that Defendants are subject to personal jurisdiction in Georgia.

Further, it is clear that Defendants are clearly seeking to establish their business, and that they have purposely availed themselves of unsolicited marketing their business and services to Georgia attorneys. Where a defendant purposely avails itself of a forum wherein it expects to derive revenue from those in the forum state, even when that revenue may be only a small percentage of the total revenue, traditional contacts analysis shows that defendants have subjected themselves to the jurisdiction of that state. *See, e.g., Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 758-759 (7th Cir. 2010).

In view of the foregoing, it is clear that this Court may properly assert jurisdiction over defendants pursuant to either test.

With respect to the issues of fair play and substantial justice, the Eleventh Circuit has outlined five factors to guide in determining whether jurisdiction in Georgia would be unfair to defendants, namely, (1) the "'burden on the defendant'" in defending the lawsuit, (2) "'the forum State's interest in adjudicating the dispute,'" (3) "'the plaintiff's interest in obtaining convenient and effective relief,'" (4) the "'interstate judicial system's interest in obtaining the most efficient resolution of controversies,'" and (5) "'the shared interest of the several States in furthering fundamental substantive social policies.'" *Diamond Crystal Brands*, 593 F.3d at 1274 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477).

It is clear that the New York forum in which Defendants profess to be located is just as far away for Plaintiff as the Georgia forum is for Defendants, although it is noted that Defendants' counsel, Mr. Baber, has offices in both New York City and Atlanta, while plaintiff is located solely in Atlanta. The remaining factors all favor Plaintiff's initial selection of the Georgia forum, and, while Plaintiff could have brought the action in the Southern District of New York, Plaintiff elected to bring it in the Northern District of Georgia where Plaintiff, many of his witnesses, and documentary evidence are located, and wherein Plaintiff has already enforced his trademarks against other infringers. In that regard, federal courts usually give substantial deference to the Plaintiff's choice of forum, whereby Plaintiff's decision to file suit in the Northern District of Georgia should not be disturbed. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (*per curiam*). This is particularly true, when the Defendants herein have not even identified New York as a proper venue, in that they made numerous references to servers in Virginia.

With reference, now, to Defendants' declarations, as set forth above, Defendant Dykema, on his own behalf, and on behalf of Defendant DocRails, (and adopted in his own declaration by Defendant Zeller) seemingly "forgot" about at least eight investors listed on the CaseRails web site (including Mr. Baber's own firm) who are located in Georgia. (Dykema Decl. [17-1] ¶ 8)

Defendants admitted that their products have been sold and licensed to persons in Georgia, at least on a "limited basis" thereby satisfying the Georgia Long Arm Statute. (Dykema Decl. [17-1] ¶ 9)

The DocRails products and services are supplied **solely** over the Internet, thereby placing them squarely within that category of the *Zippo* test that subjects them to jurisdiction in Georgia. (Dykema Decl. [17-1] ¶ 10). Nor does their denial of knowledge as to the locations of the 252 admitted users of their web-based CaseRails system act as a denial that they are not **all** in Georgia. (Dykema Decl. [17-1] ¶ 20). Further, Defendants' claim that they do not obtain information regarding the location of users, or that such locations are known only by their IP addresses (which Defendants failed to reveal) is also not a denial that **all** of those users are located in Georgia. (Dykema Decl. [17-1] ¶ 21).

Further, Defendants' allegation that "[they] do not know the places in which the recipients of their email solicitations were located does not constitute a denial that they were **all** located in Georgia. (Dykema Decl. [17-1] ¶ 16).

As noted by (then) District Judge Julie Carnes in *FusionBrands, Inc. v. Suburban Bowery of Suffern, Inc.*, Case No. 1:12-cv-000229-JEC, (N.D. Ga. September 26, 2013),

> "the Court must, for the purpose of this motion, accept the facts alleged in the complaint as true "to the extent they are uncontroverted by defendants' affidavits." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)."

In that Defendants' affidavits merely state what Defendants do not know, they failed to directly contradict the allegations in the complaint concerning infringing in this district, whereby the Court must accept Plaintiff's allegations and reject Defendants' deficient affidavits.

In that Judge Carnes is now sitting on the Eleventh Circuit Court of Appeals, it should not go unnoticed by this Court that her opinion in *FusionBrands, Id.* (Exhibit 7) goes on to discuss the *Zippo* test, as follows:

> The internet has provided a unique context for the "purposefully directed" prong of the specific jurisdiction analysis. Possibly the most cited case in this realm is the district court decision by Judge McLaughlin in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Penn. 1997). In *Zippo*, Judge McLaughlin first reviewed the traditional framework of establishing personal jurisdiction and the scant decisions that had dealt with the issue of personal jurisdiction and the internet at the time. He concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. "At one end of the spectrum are situations where a defendant clearly does business over the Internet." *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) as an example). On the other end are passive websites that simply convey information to its visitors, who, due to the nature of the internet, can be anywhere in the world. In the middle are websites that allow some interaction between their visitors but are not purely commercial in nature. *Id.* Judge McLaughlin concluded that in these types of cases, the level of interaction and commercial nature of the website dictates whether jurisdiction is proper. *Id.* Many district courts, including several in this district, have utilized the *Zippo* sliding scale test to determine if specific personal jurisdiction can be constitutionally exercised in cases involving internet activities. *See Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367 (N.D. Ga. 2009)(Evans, J.) and *Barton S. Co., Inc. v.*

*Manhole Barrier Sys., Inc.,* 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004)(Hunt, J.). Judge Evans correctly notes in her opinion that the Eleventh Circuit has not adopted or rejected *Zippo* and thus its applicability in this circuit is unclear. *Imageline, Inc.*, 663 F. Supp. 2d at 1376 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009)). The Court does not adopt *Zippo* wholesale or consider it controlling, but finds its reasoning and analytical structure helpful in analyzing whether defendant's activities in the district.

       That said, the Court notes that this case falls into the first category identified by Judge McLaughlin: where a defendant clearly does business over the internet. An illustrative case is *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999)(Carter, J.). *Stomp* also involved the issue of "whether [a party's] website constitutes minimum contacts with the forum state sufficient to exercise personal jurisdiction over it." *Id.* at 1077. Like the instant case, the party disputing jurisdiction in Stomp maintained a "highly commercial" website. *Id.* at 1078. Although there were portions of the website that provided information about the company, "a substantial portion of the site [was] dedicated to allowing the consumer to purchase [the allegedly infringing] products on-line." *Id*. The *Stomp* court found "although the actual number of sales to California citizens may be small, the critical inquiry in determining whether there was purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Id*. (citing *CompuServe*, 89 F.3d at 1265.).

## Conclusion

Defendants' CaseRails web site is clearly their *sole* place of business. They have, admittedly, targeted Georgia attorneys in their email solicitations while swearing in their U.S. Patent Office trademark filing that they, alone, are solely entitled to use the "CaseRails" mark in commerce throughout the United States. Their "we don't know" approach to the locations of those they targeted by email and those who use the CaseRails web site is clearly *not* a denial that as many as *all* of

their email targets and users are located in Georgia, and it is by no means a denial of the allegations presented by Plaintiff as to the propriety of asserting jurisdiction in this Court.

While the *Zippo* test has not been specifically adopted (yet) by the Eleventh Circuit, it is clear that it has been adopted both in the Middle District of Georgia by Judge Land and in the Northern District of Georgia by Judges Evans, Hunt, and Carnes, and the fact that Judge Carnes is now sitting on the Eleventh Circuit should certainly indicate that she will join in any effort to adopt the *Zippo* test in the Eleventh Circuit, just as it has already been adopted by the Fourth and Fifth Circuits (or that it came out of the Third Circuit).

In view of all of the foregoing, it is respectfully contended that Defendants' motion to dismiss this action based on lack of personal jurisdiction over them should now be soundly denied.

Dated:   __August 11, 2015__         By:  _s/ Sanford J. Asman_____
                                           Sanford J. Asman
                                           Georgia Bar No. 026118
                                           Plaintiff, *pro se*

Law Office of Sanford J. Asman
570 Vinington Court
Atlanta, Georgia  30350-5710
Phone   :   (770) 391-0215
E-mail   :   sandy@asman.com

## CERTIFICATE OF SERVICE

It is certified that on the date set forth below:

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

was served using the CM/ECF system.

Dated:  __August 11, 2015__          By:_ s/ Sanford J. Asman_____
                                         Sanford J. Asman
                                         Georgia Bar No. 026118
                                         Plaintiff, *pro se*

Law Office of Sanford J. Asman
570 Vinington Court
Atlanta, Georgia  30350-5710
Phone   :   (770) 391-0215
E-mail  :   sandy@asman.com