**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SANFORD J. ASMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:15-CV-01866-ELR |
| | * | |
| ERIK DYKEMA, KYLE ZELLER, | * | |
| CASERAILS, and DOCRAILS, INC., | * | |
| | * | |
| Defendants. | * | |

_____

**O R D E R**

_____

This matter is before the Court on Defendants' Erik Dykema, Kyle Zeller,

and DocRails Inc.'s ("DocRails") motion to dismiss and for judgment on the

pleadings. (Doc. No. 17.) For the following reasons, the Court **GRANTS**

Defendants' Motion.

## I. **BACKGROUND**[1]

Plaintiff Sanford Asman is an attorney with a computer science background.

Around 2000, Asman decided

> that he could combine his legal training with his computer training to
> develop a web-based software system that would provide "24/7"

---

[1]  The facts set forth herein are taken from the Complaint and should not be construed as findings of fact by this Court.

access to all litigation being handled by Asman to Asman, his clients, co-counsel, and others, whereby once a document was scanned, and entered into the system, it would be available from any location with Internet access. Asman developed such a system and called it "*CaseWebs.*"

(First Am. Compl. ¶ 34, Doc. No 5.) "CaseWebs provides a single, well-defined approach for handling litigation files, in that all physical documents are kept in loose-leaf view binders having, *inter alia*, a spine adapted to receive a printed slip." (Id. ¶ 38.) On October 23, 2007, CaseWebs was registered on the Principal Register of the United States Patent and Trademark Office, and granted "incontestable" status.

Asman additionally developed a desktop software application known as LegalNET, which was able to integrate a variety of functions. Finding issues with LegalNET's system, Asman decided to rewrite it as a web-based system. The web-based system was named "CaseSpace." On July 10, 2008, Asman applied for a trademark for "CaseSpace," which was registered on February 17, 2009. CaseSpace, like CaseWebs, was granted "incontestable" status.

On May 8, 2015, Asman received an e-mail from Defendant Erik Dykema, who identified himself as the Chief Executive Officer ("CEO") of an entity known as "CaseRails." Dykema was promoting a web-based document creation software, known as CaseRails, to attorneys involved in trademark, litigation, and corporate law. Asman called Dykema to voice his objection to the use of the mark

"CaseRails" for web-based legal software. After further research, Asman contacted Defendant Kyle Zeller, another principal in CaseRails, to voice the same objections. Asman also sent a cease and desist letter to Dykema and Zeller. In response, Dykema e-mailed Asman a letter on "RailDocs, Inc." letterhead, rejecting Asman's demands.

Asman filed his complaint on May 22, 2015, which he amended on May 28, 2015. Plaintiff asserts claims for trademark infringement, unfair competition, harassment, defamation, computer trespass, and common law conspiracy. Defendants Zeller, Dykema, and DocRails moved to dismiss the complaint on July 28, 2015, asserting a lack of personal jurisdiction.

## II.    DISCUSSION

After considering the facts alleged in the Complaint[2] and the evidentiary materials submitted by the parties, the Court must determine whether it may fairly exercise personal jurisdiction over Defendants Dykema, Zeller, and DocRails. For the following reasons, the Court finds that it cannot.

### A.        Standard of Review

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due

---

[2]    Defendant DocRails's motion is one for judgment on the pleadings, as it asserts its personal jurisdiction defense in its answer.

Process Clause of the Fourteenth Amendment to the United States Constitution."

Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58

(11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274

(11th Cir. 2009)) (internal quotation marks omitted).[3] The Court must take care not

to conflate these two inquires because Georgia's long-arm statute does not provide

jurisdiction that is coextensive with due process. Id. at 1259. Instead, the long-arm

statute "imposes independent obligations that a plaintiff must establish for the

exercise of personal jurisdiction that are distinct from the demands of procedural

due process." Id. For that reason,

> at least in theory, a non-resident defendant could engage in
> conduct that would be sufficient to confer personal jurisdiction
> under the Due Process Clause, but insufficient to confer this
> jurisdiction under a more exacting Georgia long-arm statute. In
> other words, as to sub-section 1 of the statute, Georgia's notion
> of what it means to transact business in the state could be
> stricter than the test that would be applied by a federal due
> process analysis. For this reason, an analysis that looked only to
> the due process test would be incomplete.

Askue v. Aurora Corp. of Am., No. 1:10-CV-0948-JEC, 2012 WL 843939, at *2

(N.D. Ga. Mar. 12, 2012).

B.          **Georgia's Long-Arm Statute**

---

[3]      Where, as here, a defendant presents a declaration to support a lack of jurisdiction, the burden falls to the plaintiff to present evidence supporting jurisdiction. Mazer, 556 F.3d at 1274; Smith v. Trans-Siberian Orchestra, No. 8:03-cv-1013-T-33EAJ, 2011 WL 824675, at *2 (M.D. Fla. Mar. 3, 2011) (finding that the burden-shifting framework applies where the defendant supports a lack of jurisdiction with declarations).

First, the Court must consider whether the exercise of jurisdiction over Defendants is appropriate under Georgia's long arm statute, O.C.G.A. § 9-10-91. "It is beyond cavil that the exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied." Diamond Crystal, 593 F.3d at 1260. In pertinent part, Georgia's long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, *as to a cause of action arising from* any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)–(3) (emphasis added). Although Plaintiff references each of the three prongs quoted above in his First Amended Complaint, the entirety of his argument in brief focuses on the "transacts any business" prong.[4]

---

[4] Even so, the Court finds it worth noting that subsections two and three do not provide a basis for personal jurisdiction in this case. With regard to subsection two, that provision only applies to tortious acts committed *within the state* and expressly excludes claims of defamation.

The "transacts any business" provision in § 9–10–91(1) grants personal jurisdiction over a non-resident defendant if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 828 (11th Cir. 2012) (quoting Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 631 S.E.2d 734, 737 (2006) (alteration in original)).

### i.     " Done Some Act or Consummated Some Transaction"

The Court first considers whether Defendants have "transacted any business" in Georgia.[5] In Diamond Crystal, the Eleventh Circuit instructed district

---

See FisherBroyles, LLP v. Juris Law Grp., No. 1:14-cv-1101-WSD, 2015 WL 630436, at *5 (N.D. Ga. Feb. 12, 2015) (holding that in trademark infringement cases, the tort is committed where the infringing website is hosted). That subsection is therefore inapplicable, as Defendants are based in New York and host their servers in Virginia. Concerning subsection three, that provision limits the exercise of personal jurisdiction to a tortfeasor who "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). Plaintiff has not alleged Defendants have sufficient contacts with Georgia to satisfy the requirements of this provision. Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352, 354 (Ga. 2005) (noting that the limiting conditions in subsection (3) may preclude a court from exercising personal jurisdiction over the nonresident to the extent permitted by due process).

[5]     In Georgia, individuals acting on a corporation's behalf may be deemed to have transacted business in the State "if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." Amerireach.com, LLC v. Walker, 719 S.E.2d 489, 495 (Ga. 2011) (quoting Application to Enforce Admin. Subpoenas Duces Tecum of the Sec. and Exch. Comm'n v. Knowles, 87 F.3d 413, 418 (10th Cir. 1996)). Because the actions of Dykema, Zeller, and DocRails are heavily intertwined in regard to this action, the Court will address their contacts with Georgia simultaneously.

courts to construe Georgia's long-arm "statute literally and give full effect to the breadth of its language." 593 F.3d at 1264. Thus, in the context of subsection (1), "transacts any business" requires that the "nonresident defendant has purposefully done some act or consummated some transaction in Georgia." Id. (quoting Aero Toy Store, 631 S.E.2d at 737) (internal quotation marks and punctuation omitted). Significantly, "a defendant need not physically enter the state" in order to transact business in Georgia; rather, a court sitting in diversity must consider the "nonresident's mail, telephone calls, and other 'intangible' acts" committed outside of the state. Id. (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352, 355–56 (2005)).

Defendants argue that they have not transacted any business in Georgia sufficient to subject them to personal jurisdiction in the state. In support, they provide the declarations of Dykema and Zeller. Dykema declares that he is the CEO and co-founder of DocRails, a start-up company incorporated in Delaware with its primary, and only, place of business in New York. Dykema asserts that (1) DocRails has no offices or facilities of any kind in Georgia; (2) he is not a resident of Georgia; (3) he and DocRails do not own or lease any real or personal property in Georgia; (4) he and DocRails do not have any offices, bank accounts, business addresses, phone numbers, or registered agents in Georgia; (5) DocRails does not have any investors, board members, shareholders, employees, or the like in

Georgia; (6) DocRails products and services have not been sold, except on a limited free trial basis,[6] or licensed to any person or company in Georgia; and (7) DocRails products and services have not been advertised, promoted, or marketed in any newspapers or media outlets in Georgia. Dykema further states that neither DocRails nor himself have derived any revenue from any business in Georgia.

In reference to the May 8, 2015, solicitation e-mail received by Asman, Dykema states that he prepared and sent the message from New York. Dykema further states that he obtained e-mail addresses for the message from publicly-available sources, and he did not know the physical location of any addressees. In reference to the May 22, 2015, response to Asman's cease and desist letter, Dykema states that he prepared and sent the letter from New York. The only other contact with Asman that Dykema recalls is a telephone call on May 8, 2015, which was initiated by Asman and took place while Dykema was in New York.

Kyle Zeller states in his declaration that he is the Chief Operating Officer and co-founder of DocRails. Zeller states that (1) he is not a resident of Georgia; (2) he does not own or lease any real or personal property in Georgia; (3) he does not have any offices, bank accounts, business addresses, phone numbers, or registered agents in Georgia; and (4) he has not derived any revenue from any

---

[6]     Dykema states that approximately 252 trial users of the CaseRails service have been permitted to log in and use the service for a limited number of times, without charge, to evaluate the service and provide feedback to developers. DocRails would not obtain information of the location of trial users, but Dykema estimates, based on IP addresses, that three total trial users appear to be located in Georgia.

business activities in Georgia. Finally, Zeller declares that the only contact he had

with Asman was a telephone conversation on May 8, 2015, which was initiated by

Asman and took place while Zeller was in New York.

Although Plaintiff has largely combined the long-arm statute and due

process analyses, the Court reviews the evidence before it to determine if

Defendants have transacted any business in the state. Rather than present

additional evidence, Plaintiff seeks to rebut Defendants' declarations:

- In response to Defendants' statement that it does not have any investors in Georgia, Plaintiff presents a screen shot of the CaseRails website that identifies Alston & Bird, Google, Invesco, Goldman Sachs, BlueCrest, PwC, Morgan Stanley, and King & Spalding as investors;

- In response to Dykema's statement that DocRails services have not been sold, except on a limited trial basis, to any person or company in Georgia, Plaintiff states that "except on a limited basis" is simply another way to say that the product has been sold in Georgia.

- In response to Dykema's statement that he sent the solicitation e-mail to numerous attorneys whose locations were unknown, Plaintiff states that "this statement is clearly not a denial by Defendants that they inundated Georgia attorneys with emails similar to those sent to plaintiff" (Doc. No. 18 at 4);

- In response to Dykema's statements that CaseRails had approximately 252 trial users and that DocRails did not obtain information regarding the location of the trial users, Plaintiff responds that the statements are not denials that as many as all of the trial users were located in Georgia.

Plaintiff also states that derivation of revenue is not required for personal jurisdiction, as Defendants used the mark "CaseRails" in commerce throughout the country by filing a trademark application.

Plaintiff's interpretation of Defendants' evidence and his attempt to rebut it are misplaced. First, as it pertains to DocRails' investors, the fact that a number of listed investors have offices in Georgia does not equate to a finding that investments came from those offices. Rather, Dykema unequivocally stated that DocRails does not have any investors in Georgia. In the same vein, Plaintiff mischaracterizes Dykema's declaration by stating that he admitted that DocRails products and services have been sold and licensed in Georgia. A review of the declaration reveals that Dykema admitted that DocRails offers limited free trials to potential customers. He unequivocally states that he has never derived *any* revenue from Georgia. Turning next to Plaintiff's argument regarding the location of e-mail recipients and trial users, the Court finds Plaintiff's attempted rebuttable unavailing. Indeed, Plaintiff merely speculates that because he received an e-mail from Defendants, all of the e-mails sent could have come to Georgia. Additionally, Plaintiff's speculation regarding the number of trial users, in the face of Defendants' declarations stating that, at most, three users were in Georgia is insufficient. Askue, 2012 WL 843939, at *4 (granting a motion to dismiss for lack of personal jurisdiction where the plaintiff merely speculated regarding the

existence of personal jurisdiction, rather than offering evidence to rebut the defendant's affidavit, and holding that such speculation is "wholly conclusory and insufficient to sustain a finding of jurisdiction under [Georgia's] long-arm statute"). Accordingly, the Court is left with one known e-mail to a Georgia resident, as well as three trial users in Georgia, coupled with Defendants' unrebutted testimony that they never derived any revenue from the state of Georgia.

The Court is hesitant to weigh Defendants' solicitation e-mail heavily for multiple reasons. First, Defendants did not target Georgia residents with this communication; rather the e-mail in question was sent to attorneys found on a public system. Although some of those who received e-mails were possibly Georgia residents, the Court is not convinced that Defendants "transacted business" in every state in which a solicited attorney resided. Additionally, by their very nature, e-mails are accessible from virtually anywhere the account holder has internet access. Thus, given the totality of the circumstances, the Court cannot say Defendants transacted business in Georgia by sending an e-mail to various attorneys, even though one Georgia resident received the email in question. Compare LABMD, Inc. v. Tiversa, Inc., 509 F. App'x 842, 845 (11th Cir. 2013) (nine emails, one phone call, and a website that advertises services is not enough to confer personal jurisdiction, particularly where the defendant is not registered to do

business in Georgia, has no employees or customers in Georgia, and derives no revenue from business activities in Georgia); and Jones v. Weinger, Case No. 1:14-cv-03512-ELR, Doc. No. 27 (N.D. Ga. Sept. 8, 2015) (granting Defendants' motion to dismiss for lack of personal jurisdiction finding that three e-mails to Georgia residents were insufficient to confer personal jurisdiction over non-resident Defendants), with Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1368 & 1371 (N.D. Ga. 2013) (finding personal jurisdiction existed where the defendant's Georgia customers accounted for 1–2 percent of net sales across five years, which "illustrat[ed] a consistency that rises above a random sale or two").

Moreover, Plaintiff has not shown that Defendants do business in Georgia or that DocRails maintains any physical presence in the State. Indeed, Defendants' declarations clearly state that they have never derived any revenue from activities in the state, have never purposely targeted the state, and conduct business operations from New York. Cf. Diamond Crystal, 593 F.3d at 1266–67 (finding that a defendant transacted business in Georgia when it: (1) sent purchase orders to a Georgia manufacturer; (2) requested delivery by customer pickup in Georgia; (3) directed third parties to accept delivery of goods in Georgia; (4) took legal title to goods in Georgia; and (5) promised to pay money into Georgia).

Therefore, Defendants' alleged conduct was not the "transaction" of "commercial or mercantile activity customarily engaged in as a means of

livelihood." See id. at 1264 n. 18. Accordingly, the Court finds the exercise of jurisdiction would not be appropriate under Georgia's long-arm statute, and Defendants are therefore entitled to dismissal of Plaintiffs' claims. See also Sterling Currency Grp. LLC v. Maurer, No. 1:12-cv-03022-RWS, 2013 WL 4011063, at *5 (N.D. Ga. Aug. 5, 2013) (finding that the plaintiff failed to establish personal jurisdiction where, among other things, the defendant never derived any revenue from selling goods or rendering services in Georgia); Jordan Outdoor Enter., Ltd. V. That 70's Store, LLC, 819 F. Supp. 2d 1338, 1343 (M.D. Ga. 2011) (granting a motion to dismiss and finding *inter alia* that "Defendants operated websites that are accessible everywhere and not specifically in Georgia. The websites do not target Georgia residents. The websites failed to generate any business for Defendants in Georgia. Defendants did not sell any products to Georgia residents through the internet or otherwise. Defendants did not ship any products to Georgia.").[7]

### ii. *"Arises From"*

The express language of the long-arm statute confers personal jurisdiction over nonresidents only as to a cause of action arising from those things enumerated in the act. Significantly, even assuming the Court found that Defendants transacted

---

[7] Plaintiff's failure to rebut Defendants' evidence and decision not to present any independent evidence of his own provides an additional basis for granting Defendants' motion to dismiss. After a defendant presents an affidavit or declaration in support of a lack of jurisdiction, plaintiff bears the burden of coming forth with evidence supporting jurisdiction. Mazer, 556 F.3d at 1274; Smith v. Trans-Siberian Orchestra, 2011 WL 824675, at *2. This Plaintiff has not done.

business in Georgia as a result of sending solicitation e-mails and offering free online trials, the Court still questions whether jurisdiction would lie. Plaintiff alleges (1) trademark infringement; (2) unfair competition; (3) harassment; (4) defamation; (5) computer trespass; and (6) common law conspiracy. He does not, however, make any connection between these claims and the very limited activities in Georgia. Accordingly, those contacts are of little, if any, significance to the Court's present analysis. See FisherBroyles, 2015 WL 630436, at *4 ("Even though Defendant's website, with the allegedly infringed Mark, was accessible in Georgia and other states, including, apparently California, Plaintiff does not allege that Defendant actually obtained any clients or other business in Georgia through its website or by using the Mark. Plaintiff simply has failed to allege or show that Defendant's alleged infringement constituted the 'transaction of business' in Georgia.").

"Because Plaintiff has failed to prove the existence of personal jurisdiction under Georgia's long-arm statute, the Court does not need to decide whether the exercise of jurisdiction, if it existed under the Georgia long-arm statute, which it does not, would be proper under the Due Process Clause." Id. at *6 (internal quotation and alteration omitted).

Finally, the sole remaining Defendant, Caserails, has not been served in this litigation, a fact which Asman does not contest. Moreover, according to

14

Defendants Dykema, Zeller, and DocRails, CaseRails is not a separate legal entity, but rather a trade name and service mark used by Defendant DocRails. Plaintiff does not contest this fact either. (Doc. No. 18 at 4.) Indeed, Plaintiff's First Amended Complaint names CaseRails "an unincorporated fictitious name used by Erik Dykema, Kyle Zeller, and DocRails, Inc." Accordingly, dismissal of Defendant CaseRails is appropriate. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (fictitious party pleading is generally not permitted in federal court).

### III.   CONCLUSION

For the reasons outlined above, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Judgment on the Pleadings (Doc. No. 17) and **DIRECTS** the Clerk to **CLOSE** this case.

**SO ORDERED**, this 16th day of February, 2016.

_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE